Brett E. Lewis (*Pro Hac Vice Application Forthcoming*)
Roberto Ledesma (*Pro Hac Vice Application Forthcoming*)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: Brett@iLawco.com
        Roberto@iLawco.com

*Attorneys for Iaroslav Baklan*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IAROSLAV BAKLAN,<br><br>    Plaintiff,<br><br>vs.<br><br>ALL ANSWERS LTD,<br><br>    Defendant. | No.<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

1. This action seeks declaratory relief pursuant to 15 U.S.C. § 1114(2)(D)(v) to establish that Plaintiff Iaroslav Baklan's acquisition and use of the domain name <UKEssay.com> (hereinafter the "Disputed Domain") is not unlawful, and that Defendant All Answers Ltd has engaged in Reverse Domain Name Hijacking, under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114(d)(2)(ii), and (iv).

## THE PARTIES

2. Plaintiff Iaroslav Baklan is a citizen and resident of Ukraine, having an address at Uborevicha str. 19, apt.54, Kiev, 03179, Ukraine.

3. Upon information and belief, Defendant All Answers Ltd (hereinafter "AAL") is a United Kingdom company with an address at Venture House, Cross Street, Arnold, Nottingham, NG5 7PJ United Kingdom.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1114(2)(D)(v), and 28 U.S.C. § 2201 that Plaintiff's registration and use of the Disputed Domain is not unlawful under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d) and Defendant has engaged in Reverse Domain Name Hijacking.

5. This Court has personal jurisdiction over Defendant AAL as a result of Defendant's initiation of an administrative proceeding against the Disputed Domain pursuant to the Uniform Domain Name Resolution Policy ("UDRP").

6. Venue is proper in this District under 28 U.S.C. § 1391 (b)(2). A substantial part of the property that is subject of this action is situated in this District. Moreover, venue is proper in this district due to Defendant AAL's voluntary submission to this Court's jurisdiction when Defendant filed a complaint with the World Intellectual Property Office (WIPO) dispute resolution service concerning Plaintiff's registration of the Disputed Domain.

7. The Disputed Domain has its situs in this District within the meaning of 15 U.S.C. § 1125(d)(2)(C). The registrar for the Disputed Domain is GODADDY, which is not only headquartered in this District, but upon information and belief also has additional business locations in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8. Plaintiff Iaroslav Baklan has over 12 years of experience in the fields of online marketing and search engine optimization (SEO) services in the global marketplace.

9. In 2014-15, Plaintiff Baklan founded a number of professional essay writing services, such as Edusson, Essaypro, Blahblahwriting, and Essayjedi.

10. In 2017, Plaintiff acquired the <UKEssay.com> domain name for use in connection with an online writing service for university students in the United Kingdom.

11. Plaintiff owns a number of other dictionary word domain names, many of which contain the word "essay," including: <edu-hints.xyz>, <essaytornado.net>, <book-summary.net>, <essayvikings.org>, <essaysamurai.co.uk>, <munchausenschreiben.de>, <essays.kr>, <essayvikings.io>, and <essayvikings.us>.

12. Plaintiff Baklan's business in professional writing services for students coupled with his knowledge of online marketing/SEO steered his interest in acquiring the geographically descriptive and generic <UKEssay.com> domain name. The "UK" in the Disputed Domain is an abbreviation for "United Kingdom," where customers offered essay writing services are located, and the term "Essay" is a generic word that identifies the services he offers, namely, essay writing services for students in the United Kingdom.

13. Plaintiff acquired the Disputed Domain because he believed that it would be good for SEO – UK students searching for essay services usually use the keywords, "essay," along with the geographic identifier, "UK." Having these generic and descriptive keywords in a domain name facilitate its promotion.

14. Plaintiff licenses the Disputed Domain to Boosta, Ltd. ("Boosta"), which uses it in the operation of an essay writing marketplace, where users are paired up with writers who bid on their projects. Plaintiff provides SEO services for Boosta.

15. At the time the Disputed Domain was registered in 2005, Defendant had not used "UKEssays" or "UKEssay" as a trademark.

16. Screenshots from Archive.org show that Defendant's trademark for the business at <ukessays.com> was "Degree Essays UK" until in or around 2008, when it began using the geographically descriptive and generic wording "UKEssays."

17. Defendant's complaint in the underlying UDRP proceeding acknowledges that Defendant first became known as "UKEssays" in 2008, more than three years *after* the Disputed Domain was *registered*.

18. On September 17, 2015, Defendant AAL applied for a trademark registration in the United Kingdom for the mark UKESSAYS, in connection with: "Educational consultancy services; Educational information services; Information services related to education; Library services related to documents stored and retrieved by electronic means." The mark registered on April 3, 2016.

19. Upon information and belief, Defendant does not provide any of the listed services in connection with the use of the UK-registered UKESSAYS trademark.

20. On October 16, 2019, Defendant AAL applied for a trademark registration in the United Kingdom for the mark UKESSAY, in connection with: "Advisory services relating to education; Editing of written text; Educating at universities or colleges; Education and training services; Education services." The mark registered on January 10, 2020.

21. Upon information and belief, Defendant does not provide any of the listed services in connection with the use of the UK-registered UKESSAY trademark.

22. As reported in The Guardian:

> It takes about three minutes to order a final dissertation for an English literature degree at the UK Essays website. I pick my country, subject and required grade. I go for a 2:1, choose a length – let's say 5,000 words – a seven-day deadline, and watch the price calculator hit £687 (or £1,236 for a two-day turnaround). Click "next step" and I can enter my topic before being matched with a suitable writer, who will produce an essay "personalised to my requirements". It would come with a series of promises. "The work we produce is guaranteed to meet the grade you order, or you get your money back." It will also be "100% free from plagiarism" – and on time.
>
> All of this would be totally legal and, the owners of UK Essays insist, ethical, too – because what its customers are definitely *not* supposed to do is submit the work as their own. "Our essays … are the best, most useful study aid in the world," says Daniel Dennehy, chief operating officer at All Answers, the Nottinghamshire company that owns UK Essays. "They increase any student's understanding of a topic, which subsequently improves their ability to write an excellent, unique answer of their own."

23. In other words, Defendants don't provide "advisory services" or "educational services." In reality, Defendants sell made-to-order essays to UK-based students, searching for "UK Essays" – in other words, essays for students based in the UK.

24. Defendant's use of its claimed UKESSAYS mark is highly descriptive, if not generic for the service of selling essays to students based in the UK, which is why Defendant engaged in linguistic gymnastics in crafting the identification of the goods and services in its UK trademark registrations.

25. The UKESSAY mark – which was registered several years after Plaintiff acquired the Disputed Domain – is identical to Plaintiff's <UKessay.com> domain name, except for the absence of the ".com" gTLD.

26. Defendant does not own a trademark registration for UKESSAYS in the United

States.

27. Upon information and belief, Defendant makes no use of UKESSAYS in the United States, in connection with the offering of goods or services, and lacks common law trademark rights in the United States.

28. Upon information and belief, Defendant makes no use of UKESSAY in the United States, in connection with the offering of goods or services, and lacks common law trademark rights in the United States.

29. Upon information and belief, Defendant makes no use of the "UKESSAY" mark anywhere in the world, and registered it in bad faith for the sole purpose of bolstering its UDRP filing against Plaintiff.

30. On February 17, 2020, Defendant AAL submitted a complaint with WIPO, initiated an administrative proceeding against Plaintiff's registration of the Disputed Domain, and sought an order to transfer the ownership rights of the Disputed Domain to Defendant AAL, based on Defendant's ownership of the UKESSAY and UKESSAYS marks *in the United Kingdom*.

31. The UDRP proceeding, *All Answers Ltd v. Iaroslav Baklan*, Case No. D2020-0375 (the "Proceeding") was decided by a single WIPO panelist on March 25, 2020. The Panelist issued a decision directing transfer of the Disputed Domain to Defendant AAL.

32. The Respondent in the Proceeding has ten business days to commence an action in this district to stop the transfer of the Disputed Domain from taking place.

33. Despite the fact that Defendant had agreed to submit to the jurisdiction of the courts of this District, to decide *de novo* whether the Plaintiff's acquisition of the Disputed

Domain violates Defendant's rights, under the Lanham Act, 15 U.S.C. 1125(d), the Panel did not apply Ninth Circuit law in reaching its decision.

34. In ordering the transfer of the Disputed Domain in the underlying UDRP decision, the WIPO panelist failed to account for the fact that Plaintiff has priority of ownership dating back to 2005 by virtue of its having acquired the Disputed Domain from its prior owner(s), who registered the Disputed Domain three years *before* Defendant first used the "UKEssays" wording on its Web site in 2008.

35. As a result, under Ninth Circuit law, Plaintiff's rights in the Disputed Domain pre-date Defendant's adoption and use of the generic UKEssays designation.

36. In filing the Proceeding, Defendant *chose* to submit to the jurisdiction of this Court, and to have the laws of the United States, as interpreted and applied by the Ninth Circuit and the courts in this District, apply to the parties' dispute.

37. Yet, Defendant completely disregarded the laws of this Circuit in filing a Proceeding that amounts to a naked attempt at Reverse Domain Name Hijacking.

38. Under U.S. law, a claim for cybersquatting cannot stand, unless, *first*, a complaining party has rights under the Lanham Act, and *second*, a trademark holder's claimed rights pre-date the rights of the alleged cybersquatter's rights in its domain name. Finally, the trademark holder must establish that there was registration of a domain name with a bad faith intent to profit from a known trademark.

39. All three required elements are lacking in this case.

40. Upon information and belief, Defendant was aware that its UDRP complaint needed to meet the standards not of the UDRP, but of the *Lanham Act*. It was not enough to craft a complaint that could prevail in an administrative dispute proceeding – to avoid

constituting reverse domain name hijacking under the Act, the UDRP complaint needed to not run afoul of 15 U.S.C. § 1114(b)(2)(ii) and (iv).  Defendant failed.

41. Upon information and belief, Defendant possesses no common law trade or service mark rights and no rights under the Lanham Act in connection with essay writing services under "UKEssays," "UKEssay," or any other similar mark.

42. Plaintiff's rights in the Disputed Domain pre-date Defendant's adoption of the UKESSAYS trademark in the U.K., and anywhere in the world.  As stated above, the Disputed Domain was *registered* in 2005 – three years before Defendant adopted the UKESSAYS mark in the U.K.

43. The original owner of the Disputed Domain, Navigation Catalyst Systems, conveyed it, along with all of its property rights, to a second owner, whose identity is privacy protected.  The second owner conveyed the Disputed Domain, along with all of its property rights, to Plaintiff in 2017.

44. Information concerning the ownership of the Disputed Domain is publicly available in archived Whois records, via the Web site, located at www.Domaintools.com.

45. This information would have been readily available to Defendant prior to its filing of the Proceeding.

46. At a minimum, and even without a Domaintools subscription, Defendant would have seen that the Disputed Domain has a "create date" of February 11, 2005.

47. Nor was Plaintiff's registration of the Disputed Domain in bad faith.

48. Plaintiff acquired the Disputed Domain because of its generic, dictionary word value.

49. "UK Essay" is a widely searched term on Google for students in the UK looking for help writing essays.  As stated above, no fewer than thirteen different businesses,

including Defendant and Plaintiff, use the words "UK" and "ESSAY" in their names, and to advertise their essay-writing services, including, EssayUK.com, UK-Essays.com, UK.BestEssays.com, BritishEssayWriters.co.uk, EssayWritingServiceUK.co.uk, UKEssaysHelp.co.uk, UK-Essays.org, UKEssaysExperts.co.uk, UKEssaysLondon.com, and UKBestEssay.net.

50. Plaintiff has co-existed with Defendant for the past three years, offering similar services, side-by-side, without any known issues of consumer confusion.

51. During that time, Defendant took no action, and allowed Plaintiff to rely on its inaction to build its business. It is unquestionable that Defendant would have been aware of Plaintiff for years, as both services displayed on page one of Google search results for students looking for "UK Essays."

52. Moreover, given the different look and feel of the parties' Web sites, and different types of services offered – Defendant simply supplies made-to-order essays, whereas Plaintiff's site allows users to be matched with individual essay writers who bid on projects – and the highly descriptive nature of their names, and crowded field, confusion is not likely.

53. Indeed, average students from high school and up are savvy enough to know that two Web sites with slightly different generic names, that look different, have different spacing, different logos, offer services in a different manner, and that are displayed on the same page of Google search rankings, along with other "UK Essay" sites, are most likely not related. This is especially true, given that Defendant's trademarks are highly descriptive, if not generic.

54. Plaintiff is competing for students in the UK looking for essays, not attempting to divert users looking for Defendant's UKessays.com site.

55. At no point did Plaintiff Baklan offer the Disputed Domain for sale.

56. At no point has Plaintiff Baklan offered any domain name for sale.

57. As stated above, Plaintiff Baklan's interest in the Disputed Domain was for its descriptive value as a keyword search term. Plaintiff owns a number of other domain names with relevance to the education/writing industry, that demonstrate Plaintiff's interest in "essay" related domains, including: <edu-hints.xyz>, <essaytornado.net>, <book-summary.net>, <essayvikings.org>, <essaysamurai.co.uk>, <munchausenschreiben.de>, <essays.kr>, <essayvikings.io>, and <essayvikings.us>.

58. For the above reasons, Plaintiff seeks a declaration that the Disputed Domain is rightfully owned by Plaintiff, and a finding that Defendant has engaged in reverse domain name hijacking.

59. In accordance with the Internet Corporation for Assigned Names and Numbers (ICANN) Policy, Plaintiff provided notice to Defendant AAL that a lawsuit would be commenced against it concerning registration of the Disputed Domain name within a ten-day period.

**COUNT ONE**
**Declaration Under Anticybersquatting Consumer Protection Act**

60. Plaintiff realleges and incorporates paragraphs 1-59 above.

61. As stated above, Defendant lacks trademark rights in the United States and under the Lanham Act.

62. As such, Plaintiff's registration of the Disputed Domain violates no right of Defendant's under the Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d).

63. Plaintiff did not "register" the Disputed Domain, within the meaning of 15 U.S.C. § 1125(d). The Domain Name was registered in 2005 – three years before Defendant ever made use of its claimed UKEssays mark.

64. Plaintiff acquired all property rights in the Disputed Domain owned by its original registrant.

65. As a result, because the Disputed Domain was registered before the Defendant ever made use of its claimed trademark, it cannot have been registered or used with the bad faith intent to profit off of a trademark that did not then exist.

66. In acquiring the Disputed Domain, Plaintiff did not have a bad faith intent, as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from any mark alleged to be owned by Defendant AAL.

67. In acquiring the Disputed Domain, Plaintiff did not have the intent, as provided in 15 U.S.C. § 1125(d)(1)(B), to divert consumers from Defendant's online location to a site accessible under the Disputed Domain that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

68. In acquiring the Disputed Domain, and at no time since registration, has Plaintiff offered to transfer, sell, or otherwise assign "UKEssay.com" to Defendant or any third party for financial gain without having used, or having an intent to use, the

Disputed Domain in the bona fide offering of any goods or services, nor is there prior conduct by Plaintiff indicating a pattern of such conduct.

69. Plaintiff has not registered or acquired multiple domain names that it knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties.

70. Plaintiff has not *registered*, trafficked in, or used a domain name that at the time the Disputed Domain was *registered* in 2005, was identical or confusingly similar to any mark alleged to be owned by Defendant AAL.

71. Plaintiff believed and had reasonable grounds to believe that its registration of the Disputed Domain was lawful.

72. In fact, Plaintiff acquired the Disputed Domain for the descriptive/generic qualities it evokes that have direct relevance to the professional field in which Plaintiff has operated for the past four years. As stated above, numerous companies competing in the essay writing business in the UK use the terms "UK" and "Essay" in their names, and Plaintiff is the owner of a number of other similarly descriptive domain names with relevance to the student writing services industry.

73. As required by 15 U.S.C. § 1114(2)(D), Plaintiff has given notice to Defendant of its intent to file an action to establish that Plaintiff's registration and use of the Disputed Domain is not unlawful under the ACPA.

## COUNT TWO
## Declaratory Judgment

74. Plaintiff realleges and incorporates paragraphs 1-73, above.

75. A dispute exists between Plaintiff and Defendant concerning Plaintiff's right to acquire and use the Disputed Domain. As a consequence of the dispute, an actual and justiciable controversy exists between Plaintiff and Defendant.

## COUNT THREE
## Reverse Domain Name Hijacking

76. Plaintiff realleges and incorporates paragraphs 1-75, above.

77. Defendant AAL initiated the UDRP proceeding against Plaintiff in a bad faith attempt to deprive Plaintiff of the Disputed Domain, when information concerning the registration date of the Disputed Domain was readily available.

78. Defendant also *chose* to commence the Proceeding, and in so doing, *chose* to submit itself and this dispute to the jurisdiction of this Court.

79. Defendant should have been on notice that a party who misrepresents its trademark rights, and who also has no trademark rights in the United States, has no basis to interfere with another party's rights in a domain name under the Anticybersquatting Consumer Protection Act.

80. Defendant also should have known that, in this Circuit, a domain name is a form of intangible property, which, when sold, comes with all of the rights of the property holder, including its registration date.

81. Plaintiff uses the Disputed Domains to compete in the field of UK essay writing services, where at least a thirteen different companies compete using some variation

of "UK" and "Essays" in their names and domain names – not to target Defendant or Defendant's claimed UK trademark.

82. Under the UDRP rules, Defendant had a duty to certify that the information contained in its UDRP complaint and in its responses to procedural orders were, to the best of its knowledge, complete and accurate.

83. Instead, Defendant knowingly provided the UDRP panel with incomplete and misleading information concerning its rights in its "UK Essays" mark, in connection with its bad faith scheme to gain control over the Disputed Domain.

84. The ACPA establishes a right of relief against an overreaching trademark owner seeking to take ownership of domain names that have not been registered or used in violation of the trademark owner's rights. This practice is called "reverse domain name hijacking."

85. The Internet Corporation for Assigned Names and Numbers ("ICANN"), the organization responsible for promulgating the UDRP, defines reverse domain name hijacking as "using the Policy in bad faith to attempt to deprive a registered domain-name holder of a domain name."

86. 15 U.S.C. § 1114(2)(D)(iv) and (v) state the following:

> **(iv)** If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.
>
> **(v)** A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to

      the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

87. Plaintiff's registration and use of the Disputed Domain is not unlawful under the ACPA and therefore Plaintiff has the right to possess and maintain its valuable business asset.

88. On March 25, 2020, failing to apply governing Ninth Circuit law to its decision, a single member WIPO panel erroneously decided that Plaintiff's registration and use of the Disputed Domain was in bad faith, and ordered its transfer to Defendant.

89. The UDRP decision is due no deference in this Court, which should perform a *de novo* review of the allegations herein presented.

90. Defendant has overreached on its trademark rights and wrongfully asserted a claim to the Disputed Domains.

91. The events described herein constitute reverse domain name hijacking and warrant injunctive relief, damages and attorneys' fees for Plaintiff under 15 U.S.C. § 1114(2)(D)(ii), (iv), and (v).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment:

    (a) Declaring that Plaintiff's registration and use of the domain name <UKEssay.com> is not unlawful under the ACPA, 15 U.S.C. § 1125(d);

(b) Declaring that Plaintiff's acquisition and use of the domain name <UKEssay.com> does not constitute a *registration* with the bad faith intent to profit from any mark alleged to be owned by Defendant under the ACPA, 15 U.S.C. § 1125(d);

(c) Declaring that Plaintiff is not required to transfer the domain name <UKEssay.com> to Defendant;

(d) Declaring that the Registrar GODADDY.COM LLC shall not transfer the registration for the domain name <UKEssay.com> to Defendant;

(e) Declaring that Defendant has engaged in Reverse Domain Name Hijacking;

(f) Awarding damages according to proof at trial but in an amount not less than $100,000;

(g) Awarding attorney's fees pursuant to 15 U.S.C. § 1117, and costs and interest to Plaintiff; and

(h) For such other and further relief as the Court shall deem appropriate.

Dated: April 9, 2020

LEWIS & LIN, LLC

By: /s/ Brett E. Lewis
Brett E. Lewis (*pro hac vice forthcoming*)
Roberto Ledesma (*pro hac vice forthcoming*)

81 Prospect Street, Suite 8001
Brooklyn, NY 11201

Tel: (718) 243-9323
Fax: (718) 243-9326
david@iLawco.com
roberto@iLawco.com

*Attorneys for Plaintiff*